**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STEPHEN P. WENDELL, et al., | : | |
| Plaintiffs, | : | Civil Action No. 09-3273 (JAP) |
| v. | : | **OPINION** |
| JOHNSON & JOHNSON, et al., | : | |
| Defendants, | : | |

PISANO, District Judge.

Presently before the Court is a joint motion by defendants Johnson & Johnson, Centocor Ortho Biotech Inc., Abbott Laboratories, GlaxoSmithKline LLC, Teva Pharmaceuticals USA, Inc. and Par Pharmaceuticals (collectively, "Defendants") to dismiss or, in the alternative, to transfer this matter to the Northern District of California pursuant to 28 U.S.C. § 1404. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. The Court has carefully considered the submissions of the parties and, for the reasons below, Defendants' motion to dismiss shall be denied and Defendants' motion to transfer venue to the Northern District of California shall be granted.

## I.    Factual and Procedural History

Stephen P. Wendell and Lisa Wendell, for themselves and as successors in interest to Maxx Wendell, deceased (collectively, "Plaintiffs"), filed this action in this Court alleging that

drug products manufactured, distributed and / or sold by Defendants caused Maxx Wendell (the "<u>Decedent</u>") to develop hepatosplentic T-cell lymphoma in July 2007 and die in December 2007.

The underlying facts in this case are undisputed.  In or about September 1998, the Decedent was diagnosed with inflammatory bowel disease and ulcerative colitis and began his initial treatment with a course of mercaptopurine ("<u>6-MP</u>") and prednisone, a steroid.  Then, in or about July 2002, upon the recommendation of the Decedent's treating gastroenterologist, the Decedent added Remicade® to his medical regime of 6-MP, with a course of steroid weaning. In or about November 2006, the Decedent's treatment regimen was further modified by replacing Remicade® with Humira®, while continuing the 6-MP treatment.  In July 2007, the Decedent was diagnosed with hepatosplentic T-cell lymphoma and, despite aggressive chemotherapy and other treatment, died on December 6, 2007.

Plaintiffs filed the complaint in this action in this Court on July 2, 2009[1].  The first count of the amended complaint alleges that Defendants are pharmaceutical companies "engaged in the design and/or research and/or manufacture and/or production and/or testing and/or assembling and/or labeling and/or packaging and/or distribution and/or sale and/or otherwise involved in placing into the stream of commerce various drug products intended for human use, consumption and ingestion" and that those drug products "failed to contain proper and adequate warnings to physicians and foreseeable users and consumers of the products of the risks posed by foreseeable uses of their products either singly or in combination, including but not limited to, the risk of developing certain cancers."  (amended complaint at ¶¶ 46 and 48.)  Plaintiffs' second count alleges negligence, claiming that Defendants have a "duty to warn of know or knowable risks associate with foreseeable uses of its drug products" and that "Defendants failed to timely or adequately warn prescribing physicians about the known or knowable risks of the foreseeable

---

[1] Plaintiff subsequently amended the complaint on March 17, 2010.  (dkt. no. 15).

uses of their drugs."  (amended complaint at ¶¶ 53 and 55.)  The third count of the amended

complaint alleges strict liability claiming that Defendants' "products were not accompanied by

an adequate warnings on their label providing sufficient information to physicians and patients

about the known or knowable risks of their drugs … the products were unreasonably dangerous

and in a defective condition."  (amended complaint at ¶ 62.)  The fourth and final count of the

amended complaint states a loss of consortium claim based on plaintiffs Stephen Wendell and

Lisa Wendell's deprivation of their son's advice, counsel, guidance, assistance and support.

(amended complaint at ¶ 67.)

On the same day that this action was filed in the District of New Jersey, Plaintiffs also

filed a state court action in California, which was subsequently removed to the United States

District Court for the North District of California (the "California Action").  The amended

complaint in the California Action and the amended complaint in this action involve the same

parties and make the same factual allegations.  In addition, both amended complaints state

similar causes of action based on the same general legal allegations, including that the

Decedent's injuries were caused by Defendants' drug products, individually or in combination.

## II.     Legal Standard

This Court has the authority to transfer this action, in its discretion, to the Northern

District of California pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that a district

court may transfer a civil action "for the convenience of parties and witnesses, in the interest of

justice" to a district in which the action might have been brought.  28 U.S.C. § 1404(a).

However, the plaintiff's choice of forum should not be lightly disturbed.  *See Jumara v. State*

*Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  Accordingly, the moving party has the burden

to establish that the proposed transferee forum is a proper forum and that a balancing of the

proper interests weighs in favor of transferring the case there.  *See id.* at 879; *see also Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 (D.N.J. 1996) (" 'The moving party [pursuant to § 1404(a)] must thus prove that "its alternative forum is not only adequate, but more convenient than the present forum.' " (quoting *Hudson United Bank v. Chase Manhattan Bank*, 832 F. Supp. 881, 888 (D.N.J. 1993)).

**III.**     **Legal Discussion**

**A.**     **Whether the Northern District of California is a "District in which this Action Might Have Been Brought" Under Section 1404(a)**

First, this Court must determine if the Northern District of California is a "district in which this action might have been brought" pursuant to section 1404(a).  A district is one in which an action "might have been brought" if that district  has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue.  *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir. 1970); *High River Ltd. P'ship v. Mylan Laboratories, Inc.,* 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005); *CIBC World Markets, Inc. v. Deutsche Bank Securities, Inc.,* 309 F. Supp. 2d 637, 643-44 (D.N.J. 2004).  The Third Circuit stated in *Shutte v. Armco Steel Corp.* that the relevant considerations in this regard are jurisdiction and venue:

> [A] transfer is authorized by [§ 1404(a)] only if the plaintiff had an
> 'unqualified right' to bring the action in the transferee forum at the time
> of the commencement of the action; *i.e.*, venue must have been proper in
> the transferee district and the transferee court must have had power to
> command jurisdiction over all of the defendants.

*Shutte*, 431 F.2d at 24.

The Court finds that the Northern District of California is a district where this action might have been brought.  As noted above, all of the events giving rise to the claim occurred in California.  Additionally, each of the Defendants in this action have appeared in the California

Action.  As such, there is no dispute that Plaintiff could have brought this suit in the Northern

District of California.

**B.      Whether the Northern District of California is the More Convenient Forum and Whether it is in the Interests of Justice to Transfer this Action to that District**

Next, the Court must determine if Defendant has established that the Northern District of

California is the more appropriate and convenient forum to hear this matter.    Although

emphasizing that "there is no definitive formula or list of factors to consider," the Third Circuit

has set forth a variety of private and public interests for the Court to consider in determining

whether to transfer this case under section 1404(a).   *Jumara,* 55 F.3d at 879.

The private interests include: (1) plaintiff's forum preference; (2) defendant's forum

preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the

convenience of witnesses to the extent that they may be unavailable for trial in one of the fora;

and (6) the location of sources of proof such as books and records to the extent that the records

could not be produced in the alternative forum.[1]  *See, e.g., id*.

The public interests to consider include: (1) the enforceability of the judgment; (2)

practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the

relative administrative difficulty in the two fora resulting from court congestion; (4) the local

interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the

familiarity of the trial judge with the applicable state law in diversity cases.  *See, e.g., id*.

In considering all of the above factors, the Court finds that the relevant interests weigh in

favor of transferring this case to the Northern District of California.   Although substantial

deference is typically given to Plaintiff's choice of forum, the Court affords less deference to

---

[1] In later decisions, courts have noted that given the state of technology and electronic discovery, it is unlikely that parties would be unable to produce documents in an alternative forum. *See, e.g., ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001).

Plaintiff's forum choice in this case for several reasons.  As an initial matter, New Jersey is not Plaintiffs' "home" forum, as they reside in California.  The rule deferentially viewing a plaintiff's choice of forum is premised on an assumption that a home forum is inherently more convenient than a transferee forum.  *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) (forum non conveniens analysis).  In this case, Plaintiffs reside in California.  Plaintiffs have not shown any corresponding benefit they receive in terms of convenience by litigating this action in the District of New Jersey.

In addition, most of the operative facts of this lawsuit occurred outside of New Jersey. *Eagle Traffic Control v. James Julian, Inc.*, 933 F. Supp. 1251, 1259 (E.D. Pa.1996) (noting that "courts consistently hold that a '[plaintiff's] choice is deserving of less weight where none of the operative facts of the action occur in the forum selected by the plaintiff.'").  Much of the relevant conduct in this case occurred in California.  For example, the Decedent was diagnosed with and treated for inflammatory bowel disease and ulcerative colitis in California, the drugs at issue in this action were administered to the Decedent in California and the Decedent died in California.  As New Jersey is not connected to the acts giving rise to the dispute, Plaintiffs' choice is entitled to less deference.

In fact, the only connection this matter has to the present forum is that one of the six Defendants is organized under the laws of New Jersey.  However, it is clear that this is not dispositive of a motion to transfer.  *See, e.g., APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) ("Where an alternative forum is more convenient and has more substantial connection with the litigation incorporation in Delaware will not prevent transfer.").  As discussed above, the claim arose in California, Plaintiffs reside there and the relevant conduct took place outside of New Jersey.

The public factors also weigh in favor of transfer.  Most importantly, Plaintiffs have filed a substantially similar case in the Northern District of California.  This Court has noted that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that 1404(a) was designed to prevent." *CIBC World Markets*, 309 F. Supp. 2d at 651 (citations omitted).  While this action and the California Action are not identical in every respect, the lawsuits involve the same parties, the same set of facts and substantially similar legal theories.  "Where related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.* 102 F. Supp. 2d 518, 537 (D.N.J. 2000) (citations omitted).  Consequently, the Court, having considered the relevant *Jumara* factors, finds that transfer of this matter is appropriate and in the interest of justice.  Defendants' motion to transfer shall be granted, and this matter transferred to the Northern District of California.  Because this court has decided to transfer the matter, Defendants' motion to dismiss is denied as moot.

## IV.    Conclusion

For the reasons set forth above, Defendant's motion to dismiss is denied and Defendant's motion to transfer is granted.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: October 12, 2010